UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RAYMOND C. MCARDLE )
    Plaintiff, )
  ) Civil Action No.: 1:11-cv-11805-RGS
v. )
  )
TOWN OF DRACUT/DRACUT )
PUBLIC SCHOOLS, DR. STACY )
SCOTT & THERESA ROGERS )
    Defendants. )

## PLAINTIFF, RAYMOND MCARDLE'S, OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corporation, 63 F.3d. 36-37 (1st Cir. 1995) (quoting Rule 56, Fed. R. Civ. P.). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st. Cir. 1995). 'Material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Smith v. Morse & Company, Inc., 76 F.3d 413, 428 (1st. Cir. 1996).

Once the moving party makes a proper showing as to the '"absence of evidence to

support the nonmoving party's case,' the burden of production shifts to the nonmovant." Dow v. United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st. Cir. 1993). "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st. Cir. 1995). The role of a summary judgment motion in general "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Cayne v. Taber Partners I, 53 F.3d. 454, 457 (1st. Cir. 1995).

## ARGUMENT

I. **THE PLAINTIFF IS ABLE TO SURVIVE THE MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO HIS FMLA INTERFERENCE CLAIM.**

The FMLA contains two separate and distinct types of rights for employees – so-called "prescriptive rights" and "proscriptive rights." See generally Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998). The Act's prescriptive rights set a substantive floor for the conduct of employees and grant employees certain entitlements under the act. See id. at 159. Therefore, when prescriptive rights are at issue, the employer's motivations, intent, and subjective state of mind are irrelevant. See id. The question simply becomes whether the employer interfered with the provision of a right to which the employee was entitled. See id. In this respect, the courts look to whether the employer interfered with the employee's entitlement to the disputed leave.

Of course the statute also provides a cause of action for so-called retaliation for an employee's exercise, or attempted exercise, of his FMLA rights. In this instance, it is not

the employer's preemptive interference with the exercise of the employee's rights that is at issue; but rather, whether, after the exercise or attempted exercise of an employee's FMLA rights, the employer used the employee's exercise (or attempted exercise of rights) as a "negative factor in employment actions." See Hodgen, 144 F.3d at 160. This analysis does implicate the employer's motivations and consequentially the burden of proof remains upon the employee to demonstrate both a prima facie case of retaliation and that the employer's proffered reasons for its action are a pretext for retaliation.

In the case at bar, Mr. McArdle is able to point to factual disputes over material facts, and therefore preclude summary judgment, with respect to his claims for FMLA interference.

> A. The Defendants interfered with Mr. McArdle's access to information concerning his eligibility for FMLA leave.

In order to state a prima facie case of interference with FMLA protected rights the employee need only demonstrate that the employer prevented or impeded his use, or attempted use, of FMLA benefits to which the employee is otherwise entitled. But, even before the issue of entitlement is reached, the Act and its interpreting regulations direct certain actions by the employer. The regulations developed to interpret the FMLA provide that after the employee provides advanced notice of his intent to take FMLA leave, the employer must (within 5 business days) provide a notice specifically setting forth why (if at all) the employee is not eligible for FMLA leave. See 29 CFR § 825.300(b)(1)-(2). Any dispute over the reasons asserted in the employer's notice (such as the hours worked) should be resolved by discussion between the employer and employee and said discussions shall be documented. See 29 CFR § 825.301(c). The failure of the employer to respond to the employee's specific questions may give rise to an interference claim where that failure deprives the employee of his rights under the FMLA. See Crevier v. Town of Spencer,

600 F. Supp. 2d 242, 256-57 (D. Mass. 2008) ("An employer's failure to explain FMLA procedures properly and accurately can 'constitute interference with an employee's FMLA rights if it causes the employee to forfeit FMLA protections.'"). (Internal citations omitted).

In this case, there is a threshold issue prior to any analysis over whether Mr. McArdle was an eligible employee – whether the Defendants complied with the regulations and participated in the contemplated exchange of information in the face of a request for FMLA leave. They did not. Instead of addressing this issue, however, the Defendants attempt to cloud this analysis by directing the Court's attention to their argument that Mr. McArdle was not an employee qualified to receive the protections of the FMLA.[1] What the Defendants ignore, however, is their obligation to respond to Mr. McArdle's attempt to invoke FMLA Leave. In short, the Defendant's argument with respect to Mr. McArdle's eligibility is premature on this specific issue because at this point in time there had not yet even been a determination of Mr. McArdle's eligibility. Indeed, it was incumbent upon the School to determine his eligibility at this juncture and communicate this information to Mr. McArdle.

An employee must only "provide enough information 'to place the employer on notice of a probable basis for FMLA leave'" to invoke the anti-retaliation provisions of the FMLA. See Righi v. SMC Corp., 632 F.3d 404 (7th Cir. 2011). In Righi the court noted in dicta that the employee's email, which stated he may need the next couple of days off but probably would not need and he did not want to use FMLA time, was still sufficient to put the employer on notice of the employee's potential need for FMLA time. See Righi, 632 F.3d at 409. In this case, Mr. McArdle did far more than make an equivocal

---

[1] As developed fully herein, the Defendants are incorrect and their arguments are unpersuasive on this point as well. Disputed issues of material fact exist with respect to Mr. McArdle's FMLA eligibility.

invocation of FMLA leave. Instead, as set forth in the Defendants' Statement of Undisputed Facts, Mr. McArdle contacted the Superintendent's office and requested that he be sent the "appropriate paperwork for FMLA." Thereafter, Mr. McArdle went on to request an "application" for FMLA leave. In response to these requests, all the Defendants did was provide Mr. McArdle with a generic U.S. Department of Labor "fact sheet" about the FMLA.

The Defendants' response in this situation ignored their obligation under the regulations to determine Mr. McArdle's eligibility for FMLA leave and communicate that information to him. The Defendants cannot rely upon Mr. McArdle's purported refusal to follow the district's specific policy for applying for FMLA leave. This is because the regulations, by their plain language, contemplate two different scenarios that would trigger an employer's obligation to provide the employee with information. The first is where the employee "requests FMLA leave;" and second is where "the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." 29 CMR § 825.300(b)(1). The use of the disjunctive "or" between these two options suggest that *either one* would trigger an employer's obligation to provide information under the regulations. Here, Mr. McArdle's request for "appropriate FMLA paperwork" shifts the burden upon the Defendants to "take certain affirmative steps to process the leave request...[i]n particular, after notice is given, the employer has a duty to provide a written explanation of the employee's rights and responsibilities under the FMLA...[and] a duty to make further inquiry if additional information is needed before the employer can process the leave request." See Righi, 632 F.3d at 409-410. What is more, the employer is required to provide "why (if at all) the employee is not eligible for FMLA leave." See 29 CFR § 825.300(b)(2).

In this case, the Defendants failed to fulfill their obligations under the Act. The School was well aware that Mr. McArdle was seeking FMLA leave. In response, the School failed to make a determination as to his eligibility and failed to seek any additional information from Mr. McArdle. The effect of the School's actions was to thwart Mr. McArdle's access to information and therefore necessarily implicate his rights under the FMLA. For example, by not informing Mr. McArdle of its determination of his FMLA eligibility, Mr. McArdle was unaware if he was forfeiting rights he may have had under the FMLA. Also, by failing to provide additional information, Mr. McArdle was eventually constructively terminated when the School alleged that his absence constituted job abandonment. Simply put, the Defendants failed to live up to their obligations under the Act and interfered with Mr. McArdle's attempted exercise of rights under the Act.

    B.    <u>The Defendants interfered with Mr. McArdle's ability to apply for and utilize FMLA leave.</u>

Beyond the Defendants' initial failure to respond to Mr. McArdle's requests for FMLA information and an application for FMLA leave, the Defendants have also interfered with Mr. McArdle's efforts to actually utilize FMLA leave. This requires a showing that the statutory requirements for eligibility are met, in other words that: (1) Mr. McArdle was an eligible employee under the Act; (2) the Defendant is a covered employer;[2] (3) Mr. McArdle gave adequate notice of his required leave; and (4) the need for the leave was because of a covered reason under the Act. See <u>Furtado v. Std. Parking Corp.</u>, 820 F. Supp. 2d 261, 279 (D. Mass. 2011). In this case there exist disputes of material fact with respect to these elements.

    *1.*    *Mr. McArdle is a covered employee.*

---

[2] For the purposes of the motion for summary judgment, the Defendant does not appear to dispute that it is a covered employer.

There is a dispute in this matter as to whether Mr. McArdle is an eligible employee by virtue of the FMLA's minimum hours worked requirement. The FMLA requires that in order to be eligible for leave, an employee must have worked a minimum of 1,250 hours over the preceding twelve (12) month period. A dispute over whether an employee worked the minimum required 1250 hours to be considered an eligible employee under the FMLA presents a material fact in dispute that cannot be resolved as a matter of law by the court. See Crevier v. Town of Spencer, 600 F. Supp. 2d 242, 256-57 (D. Mass. 2008); see also Weidner v. Unity Health Plans Ins. Co., 606 F. Supp. 2d 949, 955-56, 958-59 (WD Wisc. 2009).

The determination of hours worked is made pursuant to the FLSA standards and regulations. See 29 CFR § 785.11. Hours may be worked away from the office or in addition to monies paid (e.g. unapproved overtime). See Weidner, 606 F. Supp. 2d at 958-59; 29 CFR § 785.11 ("Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time."); 29 CFR § 785.12 ("The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked."). A dispute over the hours worked thus creates a dispute over the employee's eligibility and should preclude a motion to dismiss or a motion for summary judgment.

The FMLA's regulations reflect that employees – specifically such as teachers – often spend many hours outside of the classroom performing work for their daily

classroom requirements. This may include grading papers, making lesson plans, and preparing work for students. The fact that Mr. McArdle did not keep records of the time these activities took is of no consequence because the employer is obligated to show that he did not work 1250 hours in the preceding 12 months. Here, all the Defendants offer is that it is improbable that Mr. McArdle worked the required 1250 hours because he only worked 615 hours during his 82 days at the School in the preceding twelve month period. But, in the face of Mr. McArdle's claim that the balance of his time was accumulated outside of the classroom, the Defendants' reasoning is insufficient to prevail on summary judgment. In short, it should be for the fact-finder to determine whether Mr. McArdle met the minimum hours requirement based upon the conflicting testimony. Cf. Weidner, 606 F. Supp. 2d at 959 ("Determining the accuracy of each side's assertions about time added, time subtracted and the total that results requires the resolution of disputed material facts, a task reserved to the jury.").

       2.    *Mr. McArdle gave adequate notice of his required FMLA leave.*

Mr. McArdle gave adequate notice to the School of his desire to seek FMLA Leave. An employee is required to provide such notice so as to make the employer aware of his need for an FMLA qualifying leave. See 29 CMR § 825.302(c). This includes only providing verbal notice. See id. It is true that an employer may require an employee to comply with a prescribed method of seeking FMLA leave. See 29 CMR § 825.303(d). It is also true that an employee's failure to do so may result in the delay or denial of the leave. See id. But, "at all times" it is the *employer's* obligation to seek out additional information from the employee in the face of a request that puts the employer reasonably on notice of the need for FMLA leave." See 29 CMR § 825.303(c). The regulation's

plain use of the phrase "at all times" suggests that this is an obligation of the employer regardless of the method by which the employee seeks leave.

In this case, there remain disputed issues of material fact with respect to the notice that was provided by Mr. McArdle, and the School's obligation to respond to that notice. Thus, even if he did not follow the School's method of seeking FMLA leave, there is still a disputed issue of material fact with respect to whether Mr. McArdle nonetheless provided sufficient notice to trigger the School's obligation to seek more information about Mr. McArdle's desired leave. This precludes the entry of summary judgment.

3. *Mr. McArdle sought leave for a covered reason under the FMLA.*

Mr. McArdle was suffering from a "serious health condition" that would entitle him to leave under the FMLA. Specifically, he is able to demonstrate that he suffered from an incapacity of three or more consecutive days for which he sought treatment from a health care provider as was on a regimen of continued treatment under the care of the provider. See 29 CMR § 825.113(a), (c). During the 2008-2009 school year Mr. McArdle sought treatment from his doctor and received a prescription medication for anxiety and depression. Although he would have liked to return to School for the 2009-2010 school year, he was unable to do so. His reasons for doing so, and the relationship those reasons have with his care in 2008-2009 school year are disputed issues of material fact that cannot be resolved on summary judgment.

## II. THE PLAINTIFF IS ABLE TO SURVIVE SUMMARY JUDGMENT WITH RESPECT TO HIS FMLA RETALIATION CLAIM.

A. <u>Mr. McArdle's Prima Facie Case.</u>

Even if the Court does not accept that the Defendants interfered with Mr. McArdle's exercise of his protected FMLA rights, Mr. McArdle's FMLA retaliation claim stands on slightly different footing. This is because for the purposes of a retaliation claim,

Mr. McArdle must demonstrate: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was some possibility of a causal connection between the employee's protected activity and the employer's adverse employment action, "in that the two were not wholly unrelated." See Crevier, 600 F. Supp. 2d at 261. Critically, it is not necessary that the leave sought by Mr. McArdle was a protected leave or that he was entitled to that leave. See Tayag v. Lahey Clinic Hosp., Inc., 632 F.3d 788, 793 (1st Cir. 2011) ("Requesting leave is also an FMLA-protected right…for which retaliation conceivably could be wrongful even where the leave itself was unprotected.") (Internal citations omitted); Mason v. Mass. Dep't of Envtl. Prot., 774 F. Supp. 2d 349, 356 n.57 (D. Mass. 2011). The evidence before the court demonstrates that, at the very least, that are disputed issues of material fact with respect to each of these elements.

As a threshold issue, Mr. McArdle engaged in protected activity when he attempted to take FMLA leave in September, 2009. There is, at least, a dispute over the validity of Mr. McArdle's actions on September 1, 2009 and whether they sufficiently put the employer on notice of his intent to seek FMLA leave. But, in any event, the Act protects even attempts to invoke its protections. See 29 CFR § 825.220(c) (prohibiting "retaliating against an employee or prospective employee for having exercised *or attempted to exercise* FMLA rights." (Emphasis added). In Crevier, the plaintiff asserted that she engaged in protected activity for the purposes of the FMLA when she requested FMLA leave on two separate occasions. The defendant disputed that she requested leave and that requesting leave was a protected activity. The court noted that a request for leave (and thus an attempt to exercise one's rights under the Act) is a protected activity. Also, as explained by the First Circuit, a request for leave, or an attempt to request leave, is a

protected activity under the FMLA even where the leave sought is unprotected because of, for example, the employee is not qualified for the leave. See Tayag, 632 F.3d at 793.

With respect to his actions on September 1, 2009, and several times thereafter, Mr. McArdle engaged in protected activity by attempting to seek FMLA leave (regardless of whether he was eligible for such leave). For example, on September 29, 2009, Mr. McArdle sent a memorandum to Ms. Rogers in which he unequivocally expressed his desire to seek leave pursuant to the FMLA. This memorandum, in addition to his other efforts, constituted sufficient information to put the School on notice of his attempted exercise of a right under the FMLA. See 29 CFR § 825.302(c)

Mr. McArdle is also able to demonstrate that he suffered adverse employment action in the wake of his protected activities. Adverse employment action includes any material change to the terms and conditions of employment. See MacCormack v. Boston Edison Co., 423 Mass. 652, 663-64 (1996); see also Ruffino v. State Street Bank & Trust Co., 908 F. Supp. 1019, 1044 (D. Mass. 1995) ("a plaintiff must demonstrate that he or she was denied a term, condition, or privilege of employment."). In this instance, Mr. McArdle suffered adverse employment action in several respects. First, as set forth fully above, when denied even information (aside from a generic fact sheet) about his FMLA options and eligibility, Mr. McArdle was disadvantaged with respect to the terms and conditions of his employment. Second, when Mr. McArdle received the letter terminating his employment on September 28, 2009, he suffered adverse employment action. Notwithstanding the School's failure to follow statutory procedures, or the School "recasting" the nature of this letter, it nonetheless affected a detrimental result upon Mr. McArdle's employment. Also, the School's October 5, 2009, letter noticing its intent to terminate Mr. McArdle was an adverse employment action. Cf. Ritchie v. Dept. of State

Police, 60 Mass. App. Ct. 665, 664 (2004) (noting "threat of removal" is sufficient allegation of adverse employment action). Finally, on October 14, 2009, the School reiterated its intent to terminate Mr. McArdle's employment and Mr. McArdle was constructively terminated. In light of the School's issuance of an intent to terminate Mr. McArdle's employment, together with an admonishment that if he were to resign his personnel record would be expunged of his alleged job abandonment, Mr. McArdle felt he was left with no choice but to resign.

Finally, Mr. McArdle is able to demonstrate that the adverse actions he suffered were the result of his protected activity. In this respect, Mr. McArdle's burden is "quite easy to meet." See Hodgens, 144 F.3d at 165-66 (internal citations omitted). For example, temporal proximity between the protected activity and the adverse action may establish the required causal nexus. See id. at 168-69. In Crevier, *supra*, for example, the plaintiff alleged that an accommodation she previously received was revoked only a short time after her request for FMLA leave and that her termination occurred only two weeks after she attempted to take FMLA leave. See Crevier, 600 F. Supp. 2d at 261. In the context of the prima facie case, the Crevier court found this temporal relation sufficient to suggest causation. See id. ("A jury could reasonably find that the revocation of her schedule flexibility, and her termination, were directly related to her requests for FMLA leave.").

In this case, the temporal relation of the events also provides a strong inference of causation. For example, Mr. McArdle first sought FMLA leave on or about September 1, 2009. Only twenty-seven (27) days later, on September 28, 2009, the School sent Mr. McArdle a letter purporting (although without complying with statutory requirements) to terminate his employment. In response, on September 29, 2009, Mr. McArdle noted the

School's failure to comply with statutory termination notices for teachers with professional teacher status and further unequivocally stated his desire to utilize FMLA leave – explaining he had not abandoned his position. In response, only six (6) days letter, the School once again issued Mr. McArdle a letter noticing its intent to terminate his employment. Also, on October 14, 2009, the School reiterated its intent to terminate Mr. McArdle's employment leaving him with no choice but to resign. Here, as in <u>Crevier</u>, the extreme temporal relation between then events permits an inference of retaliation animus.

        B.    <u>The School's purported nonretaliatory reasons for its Actions are pretexutal.</u>

Under the familiar burden-shifting framework, Mr. McArdle is able to demonstrate that the School's purported reason for its actions are a pretext for retaliation and that the School acted with retaliatory animus. Summary judgment is disfavored when dealing with issues of motive and intent. See <u>Blair v. Husky Injection Molding Sys. Boston, Inc.</u>, 419 Mass. 437, 439 (1995) (summary judgment disfavored in employment discrimination cases because of elusive nature of employer's state of mind). The School asserts that it terminated Mr. McArdle's employment when he "abandoned his position," did not call into the substitute teacher call line, and did not send the School written information with respect to his leave. But, each of these reasons must fail. On or about September 1, 2009, Mr. McArdle took sufficient steps to inform the School of his desire to take FMLA leave. This should have triggered the School's obligation to determine Mr. McArdle's eligibility to take such leave. Notwithstanding his eligibility, which could not have been known contemporaneously with his first request for leave, the School failed to provide Mr. McArdle with information as required by the regulations. What is more, "[*i*]*n all cases,* the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the

necessary details of the leave to be taken." 29 CFR § 825.302(c). This did not happen. Instead of gathering more information, the School simply terminated Mr. McArdle's employment. Then, in the face of an even clearer indication by Mr. McArdle that he sought FMLA leave, the School again noticed the termination of his employment (an adverse action itself) and then reiterated this intention on October 14, 2009, leaving Mr. McArdle with no choice but to resign (also an adverse action). Thus, collectively, there are disputes with respect to material facts that preclude summary judgment.

### III. MR. McARDLE'S FMLA CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

The FMLA provides for a two-year statute of limitations in which to bring a claim to enforce its provisions. See 29 USC 2617(c)(1). The limitations period begins to run from the "last event" which the plaintiff alleges constitutes a violation of the Act. See id. Here, the last act which constituted an alleged violation of the FMLA was Ms. Rogers' October 14, 2009, phone call with Mr. McArdle and his subsequent constructive termination effective on that same day. During the October 14, 2009, phone call, Ms. Rogers indicated that the School would likely seek the termination of Mr. McArdle's employment. What is more, this phone call clarified the School's intent with respect to its notice of termination which Mr. McArdle remains was a retaliatory act. The October 14, 2009 phone call solidified the import of the October 5, 2009 notice and also induced Mr. McArdle to issue a letter of resignation. The inducement was the result of Ms. Rogers' representation that if he resigned, Mr. McArdle's personnel file would be expunged of information pertaining to the School's allegations of job abandonment. Therefore, the October 14, 2009 phone call not only clarified the School's intention to terminate Mr. McArdle's employment, but induced the constructive termination of his employment.

Two years from October 14, 2009, was October 14, 2011. The instant action was filed on October 12, 2011 – within the limitations period.

In the alternative, even if the Court accepts the Defendants' argument that the last alleged retaliatory act occurred on October 5, 2009, the instant action is still not time-barred because the Defendants' conduct was a willful violation of the FMLA. In order to establish a willful violation of the Act, Mr. McArdle must show that the Defendants' actions "show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"). Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003) (internal citations omitted). In this instance, the Defendants cannot be saved by their consultation with counsel *after* the School has already committed willful violation of the FMLA. Specifically, the School had an obligation to respond (in a manner set forth in the Act's regulations) to Mr. McArdle's first request for information about FMLA leave. Responding by providing a DOL fact sheet was insufficient. Instead, the School needed to undertake a determination of Mr. McArdle's eligibility for leave and communicate the same to him. It should be an issue for the fact-finder to determine whether the School's refusal to do so in this instance was a willful violation of the Act. Therefore, applying the three-year statute of limitation to willful violations of the FMLA, Mr. McArdle's claims are also timely.

### IV. MR. McARDLE'S CONSTRUCTIVE TERMINATION DOES NOT MOOT HIS RETALIATION CLAIM.

Mr. McArdle is still able to maintain his claim for retaliation despite that fact that he could not return to work at the conclusion of twelve (12) weeks of leave. As a threshold matter, Mr. McArdle did not resign; but rather, was constructively terminated when the School induced his resignation by informing him that doing so would leave no record of the allegation that he abandoned his job. But, even more importantly, "an

FMLA plaintiff may pursue a retaliation claim even if there is no claim of violation of substantive rights to leave." Colburn, 429 F.3d at 333. In Colburn, the court rejected the defendant's argument that the plaintiff's retaliation claim must fail simply because he was unable to return to work prior to the exhaustion of his FMLA leave. See id. Instead, in light of the other damages available to an FMLA plaintiff, including equitable relief and attorney's fees, a plaintiff may still pursue a retaliation claim. In this case, Mr. McArdle did not take the discretion away from Ms. Rogers to adversely impact his employment. Quite the contrary, Ms. Rogers' induced the constructive termination of Mr. McArdle as a result of her statements on October 14, 2009.

WHEREFORE, for the foregoing reasons, the Defendants' Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted,

Raymond C. McArdle,

By his Attorney,
/s/ Jeffrey R. Mazer
Jeffrey R. Mazer
BBO # 647110
Mazer Law Group, LLC.
5 Broadway
Building 1, Suite 101
Saugus, MA 01906
(781) 596-8604
info@mazerlaw.com

## CERTIFICATE OF SERVICE

I, Jeffrey R. Mazer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on October 18, 2012.

/s/ Jeffrey R. Mazer

Jeffrey R. Mazer