UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11805-RGS

RAYMOND C. MCARDLE

v.

TOWN OF DRACUT/DRACUT PUBLIC SCHOOLS,
THERESA ROGERS, DR. STACY SCOTT & W. SPENCER MULLIN

MEMORANDUM AND ORDER ON THE PARTIES' CROSS MOTIONS FOR
SUMMARY JUDGMENT

December 18, 2012

STEARNS, D.J.

Plaintiff Raymond C. McArdle brought this action against his former employer, the Town of Dracut/Dracut Public Schools, and three employees of the school system, alleging a violation of his rights under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* (Count I), intentional infliction of emotional distress (Count II), and interference with advantageous business relations (Count III). Presently before the court are the parties' cross motions for summary judgment. For the reasons set forth below, summary judgment will be granted to all defendants on all counts of the Complaint.

BACKGROUND

McArdle began working for the Dracut Public Schools in 1997 as an eighth

grade English teacher at Lakeview Junior High School.  Struggling with a 2008 divorce and its "collateral damage," the then twelve-year veteran teacher requested leave on a number of occasions during the 2008-2009 school year.  Beginning on September 22, 2008, McArdle was continually absent from school, prompting Superintendent W. Spencer Mullin on October 6, 2008, to write to McArdle requesting a doctor's note explaining his absence.  McArdle, however, remained away from work without furnishing the note.  On October 29, 2008, when McArdle expressed a desire to return to teaching, Mullin requested (and McArdle agreed) that in exchange for a waiver of the requested doctor's note, McArdle would provide such a note in the future if he missed five or more consecutive days of work.  The agreement was reduced to writing.

McArdle, however, still did not return to work.  Instead, on November 3, 2008, he wrote to Mullin requesting a further leave until December 15, 2008.  A note from a doctor accompanied the request, but it stated simply that McArdle was "not ready" to resume working.  In his letter, McArdle indicated that if his doctor advised him to postpone the December return date, he would request FMLA leave.  Mullin responded on November 13, 2008, objecting that the doctor's note lacked specificity and, in any event, purported only to explain McArdle's absence until November 17, and not to December 15.  With regard to the reference to the FMLA, Mullin reminded

McArdle that "there is a process to apply for leave under" the Act, which required that all leave requests be made in writing to the school superintendent or committee.[1]

On November 21, 2008, McArdle sent Mullin a second doctor's note stating that he was unable to work "for medical reasons" and requesting that under the teachers' collective bargaining agreement (CBA), he be permitted to borrow sick leave from his fifteen-day allowance for the following school year. Mullin granted the request in a reply letter, but stated that he expected McArdle to return to work on December 15. Without submitting any further doctor's note, McArdle remained absent from work until January 8, 2009.

In a letter dated April 8, 2009, after additional intermittent absences, McArdle requested to borrow another five days of sick leave from his following year's allotment. Because McArdle had already used his available sick and personal leave time, as well as fourteen of the fifteen days that would accrue the following year, Mullin denied the request. McArdle persisted, and on May 5, 2009, Mullin relented, granting him an additional five days of sick leave.

On May 21, 2009, the principal of the school, Theresa Rogers, sent McArdle a memorandum expressing concern about his sporadic attendance record. She noted

---

[1] This requirement was set out in the employee handbook issued to all teachers and available online.

that of the eight monthly faculty meetings held during the academic year, McArdle had missed seven, including two convened during his leaves of absence, four that occurred while he was otherwise absent from work, and one for which he offered no excuse. She further noted that he had fallen into the habit of missing one to two days per week of school when not on a leave of absence, and had not, in her opinion, adequately prepared emergency lesson plans for use by substitute teachers. McArdle refused to sign the memorandum. Rogers did not impose a suspension or other discipline for the absences or for McArdle's refusal to acknowledge the memorandum.

On June 1, 2009, McArdle wrote to Mullin informing him that he had had an "extremely stressful an[d] upsetting" argument with Rogers on May 26, 2009, and consequently had left school early and intended to stay out of work for ten school days. An attached doctor's note attributed the planned absence through June 11, 2008, to an unspecified "medical condition." McArdle did not return to work for the remainder of the school year.

In sum, McArdle worked a total of only 82 school days during the 2008-2009 term. He ascribes his absences to anxiety and depression caused by his divorce, an impending foreclosure on his home, and a bankruptcy filing, as well as issues with alcoholism. His primary physician had prescribed him medication for anxiety and

4

depression and recommended that he see a psychotherapist, but McArdle chose not to seek treatment for his depression or his problems with alcohol.  Rogers and Mullin knew that McArdle had been upset about his divorce and his financial situation, although neither was aware of his drinking problem.  (McArdle believes that Mullin suspected that he was an alcoholic).

On or about August 14, 2009, during the summer break, McArdle spoke with Rogers by telephone.  She inquired whether he was ready to return to teaching during the coming academic year.  McArdle said he both wanted and needed to return to work, but was undecided as to the proper course.  On September 1, 2009, the teachers' reporting day for the 2009-2010 school year, McArdle failed to appear. McArdle spoke with Rogers by telephone, telling her that he had made a last-minute decision not to return.  He also stated that he had decided to seek leave under the FMLA for unspecified reasons.  Rogers informed McArdle that he would have to contact the superintendent's office to obtain approval for FMLA leave.  According to McArdle, Rogers also told him that Carol Caruso, a substitute teacher who had filled in for him during the previous year, would be excited at taking over McArdle's classes.[2]

---

[2] Rogers states that she said only that she would try to secure Caruso to cover during McArdle's absence.

After speaking with Rogers, McArdle called the superintendent's office and requested Ray Ann L'Heureux, the superintendent's assistant, to send him an "application" for FMLA leave.  In response, L'Heureux provided McArdle with a "Fact Sheet" about FMLA leave published by the Department of Labor and (possibly) a medical certification form.[3]  She also attached a note stating, "Ray, you would also need to write a letter to the superintendent requesting FMLA."  Stipulation ¶ 2.

Over the course of the ensuing month, McArdle called the superintendent's office five to seven times, asking to speak to Mullin.  He did not, however, submit a written request for FMLA leave.  Although he located online the model FMLA medical certification form issued by the Department of Labor, McArdle elected not to submit it to the superintendent because the form was, by its stated terms, "optional."  From September 2 to September 28, 2009, McArdle submitted nothing in writing (including a doctor's note) to the school or the superintendent, nor did he speak with Rogers, or call the "substitute" line as required of teachers who miss school because of illness and have not been granted a leave of absence.

By letter dated September 28, 2009, Rogers notified McArdle that she was terminating him for abandoning his position.  The next day, McArdle sent Rogers a

---

[3] There is some confusion on this point, because the record variably suggests that McArdle received a medical certification form, a Fact Sheet only, or both.

memorandum asserting that under Mass. Gen. Laws ch. 71, § 42, he could not be terminated without a formal notice of an "intent to dismiss" issued at least ten days prior to the decision to terminate.  In response, Rogers recast her letter as a notice of intent to terminate and mailed it to McArdle on October 5, 2009.  As the reason for termination, the letter stated:  "[T]he district has determined that you have abandoned your position since we have not received any written correspondence from you nor have you called the substitute call-in service to alert the district that your classes would be unattended."  Rogers Dep. - Ex. F.  Also on October 5, 2009, Rogers and Mullin received by certified mail a revised version of McArdle's memorandum, in which he claimed to have discussed his FMLA leave with Rogers and complained of having received an "outdated" FMLA application from the superintendent's office. He also denied having abandoned his teaching position.  Defendants, for their part, acknowledge receiving two separate drafts of McArdle's memorandum, but claim that the second draft, like the first, contained no reference to the FMLA.  *Compare id.* - Ex. E, G, *with* Pl.'s Ex. 9, 11.[4]

On October 14, 2009, McArdle called Rogers to ask about the administration's intent "regarding [his] leave of absence and [his] continued employment."  McArdle

---

[4] According to defendants, they did not receive a version of the letter that referenced the FMLA until February 4, 2011, when McArdle's attorney sent them a demand letter.

Dep. at 146.  Rogers indicated that she could not speak for Mullin "but that her understanding was that this matter would move to termination." *Id.*  According to McArdle, "[t]he nature of the conversation was that the matter would likely move to termination.  She never confirmed that it would but that it was likely to." *Id*. at 147. Rogers told McArdle that if he resigned "everything would be expunged" from his record except his resignation letter. *Id.* at 147-148.  That same day, McArdle submitted a written letter of resignation to Rogers, opting not to pursue his statutory right to arbitrate any termination because he "was under a sufficient stress in [his] life and did not wish to deal with it." *Id.* at 154.[5]  Instead, he filed this lawsuit.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–250 (1986).  A party

---

[5] McArdle asserts that because an employee is entitled to arbitrate only an actual termination and the October 5, 2009 letter was merely a notice of an intent to terminate, he was excused from the arbitration requirement.  The court rejects this reasoning as contrary to the public policy explicitly incorporated in Mass. Gen. Laws ch. 71, § 42.

seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue as to a material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  To oppose the motion successfully, the non-moving party "may not rest upon the mere allegations or denials of his pleading . . . ."  *Anderson*, 477 U.S. at 256. Rather, the non-movant must submit "'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'"  *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993), quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975).  On cross-motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn."  *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

### *Interference with Rights under FMLA (Count I)*

The FMLA establishes two distinct sets of rights: "prescriptive" rights creating substantive entitlements, and "proscriptive" rights providing protection for their exercise.  *Colburn v. Parker Hannifin*, 429 F.3d 325, 330 (1st Cir. 2005).  McArdle asserts violations of both categories of rights.

As to the first category, 29 U.S.C. §2612(a)(1)(D) entitles an eligible employee to twelve work weeks of leave that may be taken intermittently for "a serious health condition."  With limited exceptions, any employee who takes such a leave "shall be

9

entitled, on return from such leave – (A) to be restored by the employer to the [previous] position . . . or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A), (B). To meet his or her burden on a claim of interference with this right, an employee need only show an entitlement to the leave; no showing of the employers' intent is required. *Colburn*, 429 F.3d at 330-331. To establish entitlement, an employee must demonstrate by a preponderance of the evidence that: (1) he was an "eligible employee" under the FMLA; (2) the defendant is a "covered employer"; (3) the employee gave adequate notice of his request for the protected leave; and (4) the leave was necessitated by reasons covered by the Act. *See Furtado v. Standard Parking Corp.*, 820 F. Supp. 2d 261, 280 (D. Mass. 2011), citing *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).

Defendants concede that the school system was a covered employer, but dispute that McArdle has satisfied any of the remaining three elements.[6] The court

---

[6] Defendants also argue that McArdle's FMLA claims are barred by the statute of limitations because they were not filed until October 12, 2011, more than two years after Rogers' October 5, 2009 letter of intent to terminate, *see* 29 U.S.C. § 2617(c)(1)-(2) (establishing a two-year limitations period except in the case of "willful" violations), and that his claims were in any event mooted by his resignation. Because the court finds McArdle's claims wanting on other grounds, it need not address the issue of the effective date of his termination, the triggering date for the running of the statute of limitations.

need go no further than the first, because the undisputed evidence establishes that McArdle failed to work "for at least 1,250 hours of service with [the school system] during the previous 12-month period," and is therefore not an "eligible employee." 29 U.S.C. § 2611(2)(A)(ii); *see also Crevier v. Town of Spencer*, 600 F. Supp. 2d 242, 256 (D. Mass. 2008) (neither paid vacation nor sick time is included in the calculation of hours of service under the FMLA); *Robbins v. Bureau of Nat'l Affairs, Inc.*, 896 F. Supp. 18, 21 (D.D.C. 1995) (unpaid leave excluded).  School records establish that McArdle worked only 82 days during the twelve-month period preceding September 1, 2009, the date on which he claims to have requested FMLA leave.   Under the controlling CBA, teachers' workdays were not to exceed 7.5 hours per day (a figure that McArdle concedes).  He therefore worked for a total of only 615 hours during the relevant period, far fewer than the 1,250 hours required to be deemed an "eligible employee."

McArdle objects that if the time he spent at home correcting papers and planning lessons is included, the proper calculation of his "hours of service" presents a factual dispute for a jury to resolve.  If the question was at all close, the court might agree.  *See, e.g.*, *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 142-144 (2d Cir. 2012) (holding that the district court erred in granting defendants' summary judgment where the discrepancy between the CBA calculation and the

eligibility threshold was only three hours and plaintiff alleged that he routinely spent time beyond the CBA workday limits on teaching duties); *see also* 29 C.F.R. § 825.110(c)(3) (noting that "full-time teachers . . . of an elementary or secondary school system . . . often work outside the classroom or at their homes").  Here, however, McArdle's claim that he worked sufficient additional hours at home would strain, and indeed break, the credulity of even the most indulgent jury.  As defendants point out, "[t]o reach the threshold of 1,250 hours, [McArdle] would have had to work an average of 15 and a quarter hours every day he went to school, a schedule that would have been inconsistent with [his basic] daily activities."  Defs.' Mot. at 3.  The implausible compounded by the incredible is a bootless defense to an entry of summary judgment.  *See Carroll v. Xerox Corp.*, 294 F.3d 231, 236-237 (1st Cir. 2002); *see also Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

Emphasizing that "[r]equesting leave is also an FMLA-protected right . . . for which retaliation conceivably could be wrongful even where the leave itself was unprotected," *Tayag v. Lahey*, 632 F.3d 788, 792 (1st Cir. 2011) (internal citations omitted), McArdle next asserts a violation of his "proscriptive" rights.  The FMLA

makes it unlawful for anyone to "interfere with, restrain, or deny" an employee's exercise, or attempt to exercise, his or her rights under the Act. *See* 29 U.S.C. § 2615(a). While not referenced specifically in the FMLA, case authority permits a retaliation theory to be pled as an FMLA "interference." *See Colburn*, 429 F.3d at 331-332. McArdle claims that defendants committed actionable interference both by failing to respond properly to his requests for leave and by "constructively discharging" him in retaliation for his attempt to exercise his FMLA rights. The court will address each of these claims in turn.

The FMLA mandates that employers post conspicuous notices of the pertinent FMLA requirements. 29 U.S.C. § 2619(a); *see also* 29 C.F.R. § 825.300(a). FMLA regulations further provide that the employer must include information concerning FMLA entitlements in any written materials, such as an employee handbook. 29 C.F.R. § 825.300(a). Whether or not such written materials are routinely distributed, when an employee requests FMLA leave, the employer "shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." *Id.* § 825.300(c)(1). "In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-

qualifying." *Id.* § 825.301(a).  Finally, when an employee requests FMLA leave, or the employer learns of potentially qualifying circumstances, it must notify the employee regarding his or her FMLA eligibility within five (5) business days.  *Id.* § 825.300(b)(1).

McArdle asserts that defendants failed to comply with the exchange of information contemplated by these regulations when they "failed or refused to communicate with [him] from September 1, 2009 until [they] issued the termination letter on September 28, 2009," Pl.'s Mot. at 6, and further "failed to make a determination as to his eligibility and . . . to seek any additional information from [him]."  Pl.'s Opp'n at 6.[7]  More than one court has held that the failure of an employer to provide an employee with the statutorily-required notice of its FMLA obligations may amount to actionable interference.  *See, e.g., Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 722-724 (2d Cir. 2001) (collecting cases).  Even under these exceptional cases, however, McArdle's claim flounders.

As explained by the Second Circuit in *Kosakow*, a claim for interference based

---

[7] Noting that "the usual and customary requirement for seeking FMLA leave was to give written notice to the Superintendent[, as] was set forth in the written policy of the School Committee . . . and L'Heureux reminded Mr. McArdle," defendants appear to suggest that the school system's obligations under the FMLA regulations were not triggered because McArdle failed to notice properly his FMLA leave request.  Defs.'Mot. at 6.  Because the court finds that McArdle's notice-based interference claim fails in any event, it need not decide this issue.

14

on inadequate notice will not lie unless the plaintiff is an "eligible employee" or can demonstrate that the employer should be equitably estopped from claiming ineligibility because it resulted from the employer's failure to provide the required notice. *See id.* Unlike the cases in which the second exception has been found to apply, the evidence here incontrovertibly establishes that McArdle failed to qualify for FMLA leave wholly irrespective of any action (or inaction) of the school district. *See supra. Compare Kosakow*, 274 F.3d at 725 (finding employer equitably estopped where plaintiff credibly alleged that she would have worked the additional hours necessary to qualify for leave prior to her surgery had she been informed of the requirement), *with Fulham v. HSBC Bank USA*, 2001 WL 1029051, at *7-8 (S.D.N.Y. Sept. 6, 2001) (dismissing failure to notify claim where lack of notice had no effect on employee's exercise or attempted exercise of any substantive right under FMLA). Under the circumstances presented here, "[t]o find that the defendant's technical violation of the designation regulations functions as a denial of the plaintiff's FMLA rights 'would be an egregious elevation of form over substance.'" *Fulham*, 2001 WL 1029051, at *7, quoting *Donnellan v. New York City Transit Auth.*, 1999 WL 527901, at *4 (S.D.N.Y. July 22, 1999).

McArdle's retaliation claim gathers even less traction. Under the familiar burden-shifting framework applicable to this claim, McArdle must carry the initial

burden of coming forward with evidence establishing that: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the school system's adverse employment action. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998). Assuming (generously) for present purposes that McArdle has established a prima facie case, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for his "constructive discharge."[8] *Id.* at 160-161. In response, defendants contend that McArdle was given notice of an intent to terminate for the reasons cited in Rogers' termination letter: his failure to secure appropriate authorization for his absence in September of 2009 and to arrange adequately for substitute instruction during that time. Given this facially non-discriminatory justification for defendants' actions, the presumption of retaliation is rebutted, and it falls to McArdle to demonstrate a trialworthy issue of pretext. *Id.* This he has utterly failed to do.

In an attempt to demonstrate that defendants' proffered reasons for his discharge were merely a mask for a retaliatory motive, McArdle alleges a "pattern and practice" of responding with adverse treatment whenever he requested leave, as well

---

[8] Defendants dispute that McArdle has made a prima facie showing, including that he was "constructively discharged."

as the "temporal proximity" between his FMLA request and the issuance of the notice of an intent to terminate.  McArdle was not, however, "subjected to a series of unfounded disciplinary action" in response to his 2008-2009 leave requests, as he alleges. Pl.'s Mot. at 10.  Quite the contrary, Mullin acquiesced to each of McArdle's increasingly unreasonable requests, going so far as to permit him to borrow all of his sick leave from the 2009-2010 school year, and then some.  Mullin did so notwithstanding the fact that McArdle had repeatedly failed to supply a meaningful doctor's note justifying his absence (those that he did provide merely stated that he needed leave for "medical reasons" or a "medical condition").  Rogers' expressions of concerns about McArdle's regular non-leave absences from his teaching duties and faculty meetings and the shortcomings of his substitute lesson plans cannot by any stretch be construed as "disciplinary actions," and even if they were, they were not unfounded.  Moreover, defendants' repeated willingness to accommodate McArdle's leave requests vitiates any inference of causation arising from the temporal proximity between McArdle's purported FMLA leave request and the notice of termination. *Compare id.* at 168-169 ("[C]lose temporal proximity between two events may give rise to an inference of causal connection."), *with Dodgens v. Kent Mfg. Co.*, 955 F. Supp. 560, 566 (D.S.C. 1997) (no causal connection established where employer had granted hundreds of other leaves of absence over the years).

Because the record evidence does not present a genuine issue of material fact warranting its submission to a jury, summary judgment will be entered in favor of defendants on McArdle's FMLA claim. *See Anderson*, 477 U.S. at 247-248 ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

*Common-Law Claims*

The remaining counts of the Complaint assert common-law claims against the individual defendants for intentional infliction of emotional distress (Count II) and interference with advantageous business relations (Count III). At first blush, the most perplexing claim is the one that McArdle lodges against Dr. Stacy Scott, who succeeded Mullin as superintendent. McArdle points to a letter sent by Scott to McArdle's attorney some sixteen months after McArdle's resignation outlining the school district's response to the allegations later asserted in McArdle's Complaint. McArdle claims that Scott responded in a "condescending, arrogant manner accusing Mr. McArdle of being untruthful and misrepresenting the facts." Pl.'s Response to Defs.' Stmt. of Facts ¶ 17. Mullin, according to McArdle, also inflicted intentional emotional distress by requesting McArdle to sign the October 29, 2008 agreement that McArdle furnish a doctor's note in connection with future absences of five or

more days; by engaging in "uncooperative behavior" when McArdle requested to use non-accrued sick time from the coming academic year; by refusing to take or respond to McArdle's phone calls; and by either failing or refusing to provide McArdle with the proper forms to request FMLA leave. *Id.* ¶ 18; McArdle Dep. at 163. Rogers is said to have intentionally inflicted emotional distress by "say[ing] one thing and do[ing] another," such as telling McArdle that Caruso would be excited to continue teaching his classes and then disciplining him for failing to call the substitute line and for failing to provide adequate lesson plans for substitute teachers. Pl.'s Response to Defs.' Stmt. of Facts ¶ 19; McArdle Dep. at 160-161. As for interference with advantageous business relations, McArdle faults Rogers for initiating, and Mullin for sanctioning, his termination. McArdle Dep. at 163.

*Intentional Infliction of Emotional Distress (Count II)*

McArdle's claim of intentional infliction of emotional distress is subject to the exclusivity provisions of the Workers' Compensation Act, Mass. Gen. Laws ch. 152, § 24, which bars claims against co-workers for the commission of an intentional tort "if committed within the course of the workers' employment and in furtherance of the employer's interest." *See McCarty v. Verizon New England, Inc.*, 731 F. Supp. 2d 123, 131 (D. Mass. 2010), citing *Gibney v. Dykes*, 2008 WL 2677143, at *1 (Mass. App. Ct. July 10, 2008); *see also Mullen v. Ludlow Hosp. Soc.*, 32 Mass. App. Ct.

968, 970 (1992) (claims of intentional infliction of emotional distress are preempted by the statute); *Catalano v. First Essex Sav. Bank*, 37 Mass. App. Ct. 377, 380 (1994) (same, negligent infliction of emotional distress). Defendants argue that the entirety of the complained-of conduct fell within the scope of their supervisory duties as McArdle's superiors. McArdle does not attempt to dispute this contention, nor could he credibly do so. *See id.* at 131-132. These claims are therefore barred.[9]

*Interference with Advantageous Business Relations (Count III)*

McArdle's claim of interference with advantageous business relations fails because nothing in the record indicates that defendants acted maliciously. "To make a successful claim for intentional interference with advantageous business relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Blackstone v.*

---

[9] The defendants also argue, and the court agrees, that even if the exclusivity provisions of the Workers' Compensation Act did not apply, McArdle's claim would still fail because the complained-of conduct did not rise to the actionable level of "extreme and outrageous." *See Jones v. Maloney*, 74 Mass. App. Ct. 745, 750 (2009) ("To be considered extreme and outrageous, the defendant's conduct must be 'beyond all bounds of decency and . . . utterly intolerable in a civilized community.'" (quoting *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 410 (2000))).

*Cashman*, 448 Mass. 255, 260 (2007).  In the context of employment, the Supreme Judicial Court has explicitly held that "corporate officials acting within the scope of their employment responsibilities are privileged to act unless they do so out of malevolence, that is, with actual malice."  *Id.* (internal quotation marks and alterations omitted).  The Court has "further defined actual malice in these circumstances as a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Id.* at 261 (internal quotation marks omitted).  The evidence in the summary judgment record, replete with examples of a flexible and sustained accommodation of McArdle's requests for leave, and justifiable concerns about his self-centered approach to unexcused absences, would not warrant any reasonable jury in a finding of actual malice on the part of any defendant.  Summary judgment will therefore be entered in defendants' favor on this count, as well.

## ORDER

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED.  Defendants' motion for summary judgment is ALLOWED as to all counts of the Complaint.  The Clerk will enter judgment in favor of defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE